UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP,<br><br>Plaintiffs<br><br>v.<br><br>FIDELITY NATIONAL TITLE GROUP, INC.; FIDELITY NATIONAL TITLE INSURANCE COMPANY, INC.; COMMONWEALTH LAND TITLE INSURANCE COMPANY; CHICAGO TITLE OF NEVADA, INC.; FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.; DOE INDIVIDUALS I through X; and ROE CORPORATIONS XI through XX, inclusive,<br><br>Defendants. | Case No. 2:21-cv-00348-CDS-BNW<br><br>Order |

Before the Court are Plaintiff Bank of America, N.A.'s Motions to Remand and for Attorney's Fees and Costs (ECF Nos. 7,8), Defendants Commonwealth Land Title Insurance Company's and Fidelity National Title Insurance Company's Motions to Dismiss (ECF No. 26, 34), Defendant Fidelity National Title Group, Inc.'s Motions to Dismiss (ECF Nos. 29, 39), and Defendants Chicago Title of Nevada, Inc.'s and Fidelity National Title Agency of Nevada, Inc.'s Motions to Dismiss (ECF Nos. 30, 37).

For the reasons expressed below, Plaintiff's Motion to Remand this action to state court is GRANTED, Plaintiff's Motion for Attorney's Fees and Costs is DENIED, and the Defendants' Motions to Dismiss are collectively DENIED as moot.

Relevant Background Information

Plaintiff Bank of America, N.A. ("BANA") initiated this litigation on March 1, 2021, in the Eighth Judicial District Court in Clark County, Nevada asserting breach of contract and insurance bad faith causes of action. ECF No. 1, Ex. 1. BANA sued Fidelity National Title Insurance Company ("FNTIC") (a Delaware corporation with principal place of business in Florida), Fidelity National (successor in interest to United Title Insurance Company), Commonwealth Land Title Insurance Company ("Commonwealth") (a Pennsylvania corporation with principal place of business in Florida), Chicago Title Nevada (a Nevada corporation with principal place of business in Nevada), and Fidelity Nevada (a Nevada corporation with principal place of business in Nevada). *Id.* Chicago Title Nevada and Fidelity Nevada are the only defendants that are Nevada entities.[1]

The same day that BANA filed in state court, FNTIC and Commonwealth removed this action to federal court. ECF No. 1. Given the immediacy of the removal, none of the defendants had been served prior to removal. *Id.* at 2. This tactic of removing a diversity case before the forum defendants have been served is termed "snap removal." *See, e.g., Deutsche Bank Nat'l Trust Co. v. Fidelity Nat'l Title Grp., Inc.*, 2020 WL 7360680, at *1 (D. Nev. Dec. 14, 2020). The goal of snap removal is to circumvent the forum defendant rule, which prohibits removal when any defendant "properly joined and served" is a forum defendant. 28 U.S.C. § 1441(b)(2).

BANA now moves to remand to state court, arguing that removal was improper because the presence of Fidelity Nevada, a forum defendant, defeats this Court's diversity jurisdiction. ECF No. 7 at 5. FNTIC and Commonwealth respond that removal was proper for a few reasons. First, they assert that the "properly joined and served" language of § 1441(b)(2) compels this Court to allow snap removals. ECF No. 31 at 6-7. Second, they assert that Fidelity Nevada is improperly joined to defeat removal. *Id.* at 12-14. Third, they assert that Freddie Mac is a real

---

[1] BANA notes that Chicago Nevada may have been inadvertently named. ECF No. 7 at 1. This Court analyzes *infra* whether Fidelity Nevada, the other forum defendant, was "properly joined."

2

party in interest whose presence establishes this Court's jurisdiction via federal question jurisdiction. ECF No. 31 at 3-19. BANA replied that all three grounds for removal have no basis in law and reiterated their request for the matter to be remanded to state court. ECF No. 32 at 2-3.

The Court first addresses Plaintiff's Motion for Remand (ECF No. 7) and thereafter the Defendants' Motions to Dismiss (ECF Nos. 26, 29, 30, 34, 37).

### I.     Motion for Remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *See* U.S. Const. art. III, § 2, cl. 1; *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). When initiating a case, "[a] plaintiff is the master of [their] complaint, and has the choice of pleading claims for relief under state or federal law (or both)." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 368, 389-99 (1987). Generally, plaintiffs are entitled to deference in their choice of forum. *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 949-50 (9th Cir. 2017).

However, Congress has enacted statutes that permit parties to remove cases originally filed in state court to federal court. 28 U.S.C. § 1441. The general removal statute permits "the defendant or the defendants" in a state-court action over which the federal courts would have original jurisdiction to remove that action to federal court. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). "To remove under [§ 1441(a)], a party must meet the requirements for removal detailed in other provisions." *Id.* When federal jurisdiction is based solely on diversity jurisdiction, the case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," 28 U.S.C. § 1441(b)(2). *Home Depot*, 139 S. Ct. at 1746; *see also Lively v. Wild Oaks Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) (describing the "forum defendant rule"). A defendant "always has the burden of

establishing that removal is proper" and must overcome a "strong presumption against removal jurisdiction." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (internal quotation marks and citation omitted). Federal courts construe the removal statute against removal. *Id.; see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

      i.      *Discussion regarding "snap removal"*

When a defendant in a non-diverse lawsuit seeks to remove a state-court action to federal court before a forum defendant is served with process, defendants circumvent the forum defendant rule. This procedural loophole is called "snap removal." It encourages defendants to "race to the courthouse" to "make an end run around the forum defendant rule." *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316 (D. Mass. 2013). Courts that have confronted snap removal are split. *Compare Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("a home-state defendant may in limited circumstances remove actions filed in state court on the basis of diversity of citizenship") *and Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018) ("this result…allows [defendant] to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result") *and Texas Brine Co. v. Am. Arbitration Ass'n*, 955 F.3d 482, 487 (5th Cir. 2020) ("[a] non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be properly joined and served is a citizen of the forum state") (internal quotations omitted) *with Goodwin v. Reynolds*, 757 F.3d 1216, 1219 (11th Cir. 2014) (affirming a district court's dismissal without prejudice of a case that had been snap removed to federal court so "that plaintiff could refile the case in state court in such a manner as to irrefutably trigger the forum-defendant rule and…preclude a second removal"). The Ninth Circuit has not specifically addressed snap removal, whereas noted above, other Circuits have endorsed the practice.

4

At the district court level, snap removals have sometimes been found to be proper under a strict reading of the statute's plain language. *Little v. Wyndham Worldwide Ops., Inc.*, 251 F. Supp. 3d 1215, 1220 (M.D. Tenn. 2017) (collecting and summarizing cases); *see also Terry v. J.D. Streett & Co., Inc.*, 2010 WL 3829201, at *2 (E.D. Mo. Sept. 23, 2010) (approving of snap removal based on statute's plain language). On the other hand, district courts that find snap removals improper tend to analyze the purpose behind the forum defendant rule, the congressional intent behind that rule, and evaluate whether allowing snap removals would produce an absurd result. *Perez v. Forest Labs., Inc.*, 902 F. Supp. 2d 1238, 1246 (E.D. Mo. 2012) (disapproving of snap removal based on legislative intent), *Perfect Output of Kansas City, LLC v. Ricoh Ams. Corp.*, 2012 WL 2921852, at *2 (W.D. Mo. July 17, 2012) (same); *Delaughder v. Colonial Pipeline Co.*, 360 F Supp. 3d 1372, 1379 (N.D. Ga. 2018) ("[T]he majority of courts that remanded snap removals did so on a legislative intent rational, agreeing that the literal application of the statutory language favors snap removals."); *Deutsche Bank Nat'l Tr. Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021) (finding the plain language of § 1441(b) ambiguous and that permitting snap removal would produce an absurd result).

      As evidenced by the collection of cases with differing results, courts "are in disarray on the question" of snap removal. *See Gentile*, 934 F. Supp. 2d at 316 (collecting cases). Many district courts seem to agree that the "properly joined and served" language plainly allows non-forum defendants to remove cases prior to service upon forum defendants. *Id.* at 317. They differ as to whether following that plain meaning is compulsory, or whether the result (of snap removal) is so contrary to congressional purpose or absurd in result that the bar to removal ought to apply. *Id.*

. . .

. . .

5

      ii.      *The Parties' Competing Arguments on the Propriety of Snap Removal*

In sum, BANA argues that the claims in this case properly reside in state court. BANA first argues that snap removal is contrary to precedent and further argues that removal was defective because no defendant was served. ECF No. 7 at 7-8. Finally, BANA argues that even if Fidelity National and Commonwealth could remove before service, the statute would not allow that to defeat diversity of citizenship between adversarial parties. *Id.* at 9-10.

Fidelity National avers that BANA's motion to remand requires this Court to disregard the plain meaning of the statutory text of 28 U.S.C. § 1441(b)(2) precluding removal based on in-state citizenship when the defendant has been properly joined and served. *See* ECF No. 31 at 2, 6-13. Fidelity acknowledges that the local agents in this case had not been served at the time of removal but argues that the purpose of the removal statutes is to protect out-of-state defendants, regardless of whether they have been served or not, and therefore removal before a defendant is actually served should be allowed by the Court. *See generally id.* Fidelity further argues that even if the Court disagrees with them regarding application of the removal statute, the circumstances surrounding BANA's joinder of parties, or as argued by Fidelity "misjoinder," that remand is nonetheless unwarranted, arguing that BANA fraudulently joined eighteen claims in order to defeat diversity. *Id.* at 13-16. Last, Fidelity contends that, even foregoing the aforementioned arguments in support of denying the motion for remand, the case should still not remand because the case presents a federal question. *Id.* at 17-20.

As set forth below, the Court respectfully disagrees with Fidelity.

      iii.      *Snap Removal is Improper*

The Court has spent considerable time weighing the arguments set forth in moving papers. Both parties present solid arguments in support of their positions on whether snap removal is proper. After carefully considering the text and structure of the removal statute as a

whole, and strictly construing the removal statute against removal, this Court finds that snap removal is an improper tactic and therefore Defendants were not permitted to remove the action prior to their receipt of service.

Federal courts strictly construe the removal statute due to concerns regarding federal courts infringing upon state sovereignty. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined."). To avoid collision between state courts and federal courts, "it is to be presumed that a cause lies outside" the limited jurisdiction of the federal courts, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74 (9th Cir. 2017) (internal quotations and citation omitted); *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (defendants seeking to remove an action grounded in state law bear the burden to show that "the complaint...is within the original jurisdiction of the district court"). This burden on a removing defendant is especially heavy because "[t]he removal statute is strictly construed and **any doubt about the right of removal requires resolution in favor of remand**." *Id.* (emphasis added) (citations omitted); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.")).

Defendants cannot meet the high burden of jurisdiction because they cannot overcome this Court's doubts about their right of removal. This Court follows the many courts in this District and nationwide which have found the plain meaning of the removal statute is at odds with the purpose of the statute.[2] The language of 28 U.S.C. § 1441(b)(2) contravenes the

---

[2] This Court recognizes that other courts have found the opposite and have determined that § 1441(b)(2) is unambiguous. *See, e.g., U.S. Bank, N.A. v. Fidelity Nat'l Title Grp., Inc.*, 2021 WL 5566538, at *4 (D. Nev. Nov. 29, 2021); *Doe v. Daversa Partners*, 2021 WL 736734, at *5 (D.D.C. Feb. 25, 2021) (rejecting Judge Woodlock's reasoning as "strained").

statute's purpose and creates an absurd result. The absurd result of snap removal is that the removal statute would be granting jurisdiction over a set of cases that previously had no jurisdictional basis to be heard by federal courts: cases lacking original jurisdiction or diversity jurisdiction between parties (i.e., cases like the one at issue presently, where Plaintiff pleads only state law claims and sues non-diverse Defendants). The difference between the availability of jurisdiction premised on snap removal and the lack of such jurisdiction could come down to slivers of time – hours, minutes, even seconds – between the Plaintiff's filing of the Complaint and Defendant's removal to federal court prior to service. For example, it is an absurdity that this Court should have jurisdiction over a case wherein proper service takes N hours following the filing of the complaint and the Defendant removes to federal court within N - 1 hours, but not have jurisdiction if the Defendant removes to federal court within N + 1 hours.

When the plain meaning of a statute leads to "absurd or futile results," courts should look beyond the words to the purpose of the act. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940).

Even in the alternative, if the result is not thought to be so absurd as to warrant this construction of the statute, snap removal still should not be permitted. "Even when the plain meaning [does] not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,'" courts should follow that purpose, "rather than the literal words." *Id.*

Assuming *arguendo* that the plain language of 28 U.S.C. § 1441(b)(2) permits snap removal in certain cases, the purpose of the forum defendant rule is best fulfilled by rejecting snap removals and remanding such cases back to state court. The purpose of the removal statute has been analyzed at length by other courts facing this same issue. *See, e.g., Gentile*, 934 F. Supp. 2d at 319-21 (describing the "history and purpose of removal" as well as the "properly joined and

served" language). "The removal power, and by extension the forum defendant rule, is founded on the basic premise behind diversity jurisdiction itself, [which] was designed to protect non-forum litigants from possible state court bias in favor of forum-state litigants." *Id.* at 319. Forum defendants do not need protection from bias of the forum state, so § 1441(b)(2) protects the plaintiff's choice of a state court forum where a forum defendant is a proper party to the case. *Id.* The goal of the "properly joined and served" language was to "thwart gamesmanship by plaintiffs who joined forum defendants with no intent of ever serving them." *Deutsche Bank*, 2020 WL 7360680, at *3.

Instead of thwarting gamesmanship, however, the properly joined and served provision seems to have not only created a loophole, but also encourages exploitation of that loophole. "To adopt a literal interpretation of the joined and served provision would promote gamesmanship by defendants through allowing removal before a plaintiff has a meaningful chance to serve any defendant." *Black v. Monster Beverage Corp.*, 2016 WL 81474, at *3 (C.D. Cal. Jan. 7, 2016) (internal quotation omitted). Viewing the words "joined and served" in light of the statute's goal to permit only out-of-state defendants to litigate in federal courts, a more sensible reading "is to prevent plaintiffs from improperly joining forum defendants that they do not actually intend to pursue in order to prevent removal." *Standing v. Watson Pharm., Inc.*, 2009 WL 842211, at *3 (C.D. Cal. Mar. 26, 2009). But where a forum defendant is not fraudulently joined, following the plain meaning of the statute both undermines the general purpose of the forum defendant rule (i.e., to keep certain cases in state court) and inappropriately prevents plaintiffs from litigating in the forum of their choice. *Id.* at *4; *see also Deutsche Bank*, 2020 WL 7360680, at *2-4 ("The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served.").

1   Snap removal serves to allow gamesmanship by defendants who "are sophisticated and
2  have sufficient resources (or suspicion of impending litigation) to monitor court filings and
3  immediately remove a case before a forum defendant can be served."[3] *Deutsche Bank*, 2020 WL
4  7360680, at *4. Ultimately, the purposes underlying § 1441(b)(2) are better served by
5  disallowing removal before any defendant is served. *See, e.g., Carrington Mortgage Servs., LLC v. Ticor*
6  *Title of Nevada, Inc.*, 2020 WL 3892786, at *2-3 (D. Nev. July 10, 2020) (Mahan, J.) (granting a
7  motion to remand in a snap removal case and adopting the policy argument that Judge
8  Woodlock espoused in *Gentile*). The plaintiff can preserve its ability to remain in state court by
9  serving the forum defendant first and without delay. The non-forum defendant may still argue
10 that the forum defendant is a sham who should be regarded for purposes of removal. *Id.; see also*
11 *Gentile*, 934 F. Supp. 2d at 322-23. And this interpretation accords with the Supreme Court's
12 mandate on strictly construing the removal statute and the jurisdiction of federal courts more
13 generally.
14   Contrary to the arguments advanced by Fidelity, and discussed further herein, there is no
15 basis for diversity jurisdiction because Fidelity Nevada was properly joined to this action as a
16 forum defendant. There is no federal question jurisdiction because BANA's claims are properly
17 alleged under state law. There is also no basis for removal jurisdiction because allowing "snap
18 removals" would undermine the purpose of the removal statute, leading to absurd and
19 unintended results. Finding no bases for jurisdiction, this Court must grant Plaintiff's motion to
20 remand the matter to state court.
21   *iv.   Fidelity Nevada was Properly Joined and is Not a Sham Defendant*
22   Both Fidelity National and Commonwealth (hereinafter referred to collectively as "the
23 defendants") argue that Fidelity Nevada is "fraudulently" joined because it did not underwrite
24

---

[3] While only 11 years have elapsed since the most recent amendment to 28 U.S.C. § 1441(b)(2), advancements in technology and e-monitoring of case filings have improved significantly and exponentially. Such innovations further contribute to gamesmanship and an ability to thwart the purpose of the removal statute.

the policies or handle the title insurance claims. *See* ECF No. 1 at 3, ¶4. I disagree. Fidelity Nevada, the forum defendant in this litigation, was properly joined by BANA because BANA's claims against Fidelity Nevada satisfy both prongs of the rule permitting joinder of parties. Rule 20(a)(2) states "[p]ersons…may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A-B).[4] "Permissive joinder is to be liberally construed to promote the expeditious determination of disputes, and to prevent multiple lawsuits." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548 (9th Cir. 2015) (citing *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

      BANA can meet the first prong of the rule, regarding the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). That test "refers to similarity in the factual background of a claim." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). BANA's claims against Fidelity Nevada indeed arise out of the same series of transactions or occurrences as its claims against Fidelity National and the other underwriter defendants. *See generally* Complaint, ECF No. 1, Ex. 1. BANA alleges that "a connected 'series of transactions and occurrence[s]' directed from Fidelity [National] at the top, through its wholly owned underwriters, down to Fidelity Nevada, gave rise to BANA's damages." ECF No. 32 at 9-10. Essentially, BANA alleges that it "obtained loans insured by policies underwritten by Fidelity's subsidiaries, issued by those [] wholly owned subsidiaries on standardized forms, [] all denied by Fidelity [National] based on global positions [Fidelity National] adopted that were in direct

---

[4] As the instant action was initially filed in state court, BANA joined the defendants pursuant to Nev. R. Civ. P. 20, Nevada's analogue to Fed. R. Civ. P. 20. The state and federal joinder rules are nearly identical in language and equivalent in substance.

contrast to the representations made by Fidelity and the entities it controlled." *Id.* at 11. BANA further notes that anticipated discovery will largely focus on the same types of public representations regarding insurance coverage by defendants, the descriptions of such coverage in Fidelity's manuals, and Fidelity's claims handling procedures for claims arising from Nevada Homeowner Association foreclosures. *Id.* at 11-12. In total, the evidentiary overlap in the facts giving rise to each of BANA's causes of action against Defendants, including both the forum and non-forum defendants, establishes the first prerequisite to permissive joinder.

BANA can also meet the second prong of Fed. R. Civ. P. 20, regarding common questions of law or fact. It requires only the existence of "a single question of law or fact" in common to permit joinder. *Schreckengost v. Nevada ex rel. Nevada Dep't of Corrections*, 2020 WL 3050708, at *4 (D. Nev. June 8, 2020). BANA alleges several common questions of fact pertaining to both Fidelity Nevada and the non-forum defendants, including, *inter alia*, whether specific insurance forms provided coverage for losses caused by an HOA's foreclosure sale, whether Fidelity instructed its underwriters and local agents to represent that those forms provided such coverage, and whether Fidelity adopted coverage positions at odds with its manuals to wrongfully deny all the insurance claims. ECF No. 32 at 13. Furthermore, BANA's claims of tortious bad faith, breaches of the covenant of good faith and fair dealing, and of deceptive trade practices apply to all defendants and turn on specific factual inquiries that can be resolved efficiently during the same adjudication. The commonality posed by the specific factual and legal inquiries related to BANA's causes of action establishes the second prerequisite to permissive joinder.

Because BANA can meet both prongs of the permissive joinder test described in Fed. R. Civ. P. 20(a)(2) with respect to Fidelity Nevada, its causes of action against Fidelity Nevada were properly joined to its causes of action against the non-forum defendants.

Defendants' assertion that removal was proper because "only a handful of the eighteen separate claims [brought by BANA] involve Fidelity Agency" (ECF No. 31 at 12) is unavailing. The percentage of claims against Fidelity Nevada compared to BANA's other claims is irrelevant, and Defendants cite no authority for the proposition that "only a handful" of claims is insufficient to establish permissive joinder. *Cf. Walker v. Bryson*, 2012 WL 5186658, at *4 (E.D. Cal. Oct. 16, 2012) ("The common question may be one of fact or of law and need not be the most important or predominant issue in the litigation."). The allegations underlying BANA's claims against the underwriter defendants and Fidelity Nevada, the similarity of factual and legal issues that need to be resolved to adjudicate those claims, and the expediency of resolution in one consolidated lawsuit all marshal in favor of permitting BANA to join its claims against Fidelity Nevada with its claims against the other defendants. Accordingly, I find that Fidelity National was not fraudulently joined.

      v.    *Freddie Mac is not a Real Party in Interest to this Lawsuit*

Fidelity argues that this Court has federal question jurisdiction "because Freddie Mac is the real party in interest" with respect to one of the insurance policies, claiming that Freddie Mac owned one of the loans at issue in the underlying litigation, while BANA simply serviced the loan. ECF No. 31 at 17-19 (citing 12 U.S.C. § 1452(f) (granting district courts original jurisdiction over actions involving the Federal Home Loan Mortgage Corporation, or as it is colloquially known, "Freddie Mac")). Defendants fail to cite authority in support of its proposition.

Freddie Mac is not a party to the litigation and cannot be used as a looming specter which establishes federal jurisdiction. The language of the jurisdictional statute, to which Defendants cite, states that "all civil actions **to which the Corporation is a party** shall be deemed to arise under the laws of the United States...." 12 U.S.C. § 1452(f) (emphasis added).

Freddie Mac is clearly not a stated party to the action and has not moved to intervene at any point. 12 U.S.C. § 1452(f) does not allow for this Court to exercise jurisdiction over a Nevada lawsuit wherein Freddie Mac is not explicitly a party.

Defendants acknowledge that Freddie Mac is not the plaintiff in this case but claim that BANA lacks standing to bring its claims on behalf of Freddie Mac as its loan servicer. ECF No. 31 at 17-19. Defendants urge the Court to find Freddie Mac a party in interest to the litigation as the party who should have brought the claims that BANA attempts to bring. *Id.* This reasoning fails for three reasons.

First, Defendants fail to cite to any federal rule, including Fed. R. Civ. P. 17 which governs real parties in interest, or Fed. R. Civ. P. 19 which governs mandatory joinder, for their proposition that Freddie Mac must be a plaintiff to this action. Plaintiff's complaint itself alleges that it is the beneficiary of the Deeds of Trust in question and thus the insured under those policies. ECF No. 1, Ex. 1 at 26. Numerous cases applying Nevada law have found that loan servicers have standing to assert legal claims on behalf of federally backed mortgage companies. *See, e.g., Saticoy Bay, LLC v. Flagstar Bank, FSB*, 699 F. App'x 658, 659 (9th Cir. 2017) ("[T]he loan servicer, acts as Fannie Mae's agent, and has standing to assert a claim of federal preemption."); *Nationstar Mortgage, LLC v. SFR Invs. Pool 1, LLC*, 396 P.3d 754, 758 (Nev. 2017) ("[W]e hold that the servicer of a loan owned by a regulated entity may argue [a preemption claim], and that neither Freddie Mac nor the FHFA need be joined as a party.") While preemption claims are not the exact issues in the present case, I find the other courts' reasoning persuasive and analogous in determining that Freddie Mac need not be joined here.

Second, there is no reason this Court should look beyond the pleadings to determine whether Freddie Mac could have brought the claims. Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

14

*Caterpillar*, 482 U.S. 392. "The Supreme Court has rejected the theory that federal courts, when assessing their jurisdiction, should look beyond the pleadings to discover unnamed real parties in interest." *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 91, 92-93 (2011)). Freddie Mac is absent from BANA's complaint and therefore there is no federal question present on the face of the complaint. *See generally* ECF No. 1, Ex. 1.

Finally, Defendants' argument that BANA lacks standing may be asserted upon remand. Having no jurisdiction over the present controversy, this Court is powerless to determine BANA's standing to bring this lawsuit in state court.

    *vi.*    *BANA is not Entitled to Recover its Fees and Costs*

Plaintiff moves for an award of its fees and costs incurred because of Defendants' removal. ECF No. 7 at 15-16. Due to the unresolved nature of the questions of law at issue in this case, I find that removal was neither in bad faith nor "objectively unreasonable." *See Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006) ("[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."); *Deutsche Bank*, 2020 WL 7360680, at *4 (D. Nev. Dec. 14, 2020) ("While I find that removal was improper, the courts are in disarray on this issue, so removal was not 'objectively unreasonable.'"). Plaintiffs have not plead or demonstrated unusual circumstances that would warrant fees and costs in the present matter. Therefore, I deny BANA's motion for fees and costs.

**Conclusion**

For the reasons above, IT IS ORDERED that Plaintiff's Motion to Remand (ECF No. 7) is GRANTED. This case is to be remanded to the state court from which it was removed for all further proceedings.

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney's Fees and Costs (ECF No. 8) is DENIED.

IT IS FURTHER ORDERED that Defendants Commonwealth Land Title Insurance Company's and Fidelity National Title Insurance Company's Motions to Dismiss (ECF No. 26, 34) are DENIED as moot.

IT IS FURTHER ORDERED that Defendant Fidelity National Title Group, Inc.'s Motions to Dismiss (ECF Nos. 29, 39) are DENIED as moot.

IT IS FURTHER ORDERED that Defendants Chicago Title of Nevada, Inc.'s and Fidelity National Title Agency of Nevada, Inc.'s Motions to Dismiss (ECF Nos. 30, 37) are DENIED as moot.

The Clerk of the Court is instructed to close this case.

IT IS SO ORDERED.

DATED this July 18, 2022.

_____
Cristina D. Silva
United States District Judge